ALLISON GAS TURBINE DIVISION OF GENERAL MOTORS CORPORATION, Petitioner,

v.

DISTRICT OF COLUMBIA, Respondent.

No. 93–SP–1008.

District of Columbia Court of Appeals.

Argued March 9, 1994.

Decided June 2, 1994.

Mark A. Dombroff, with whom Dane B. Jaques and Mark E. McKinnon, Washington, DC, were on the brief, for petitioner.

Donna M. Murasky, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel at time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for respondent.

Before TERRY, WAGNER, and KING, Associate Judges.

KING, Associate Judge:

This case is before the court on a question of law certified by the United States Court of Appeals for the District of Columbia Circuit, pursuant to D.C.Code § 11–723 (1989).[1] We have been asked to determine whether the District of Columbia ("the District") is shielded from tort liability under the public duty doctrine under circumstances where Metropolitan Police Department Harbor Patrol officers ("Harbor Patrol") would not allow private citizens, who volunteered their services on the scene, to assist in the rescue of three victims of a helicopter crash. For the reasons discussed below, we conclude that on these facts the public duty doctrine applies and, therefore, the District of Columbia is not liable.

## I.[2]

On August 21, 1987, a helicopter containing a pilot and three passengers crashed into the Potomac River in the District of Columbia. The pilot freed himself from the wreckage and was rescued by civilian scuba divers, but the three passengers remained trapped inside the helicopter. In response to emergency calls by civilian witnesses, the Harbor Patrol arrived to assist the passengers; however, since the police did not have diving apparatus on board, officers were dispatched to obtain the necessary equipment. While the equipment was being obtained, several civilian scuba divers at the scene offered assistance. That offer was declined, and the would-be rescuers were ordered by the Harbor Patrol to stay out of the water. Eventually, the necessary equipment arrived, and the Harbor Patrol began rescue operations.

Those efforts were unsuccessful, however, and all three passengers drowned.

The pilot and the passengers' survivors brought an action against Allison Gas Turbine Division of General Motors Corporation ("Allison"), which had manufactured the helicopter's engine, in the United States District Court for the District of Columbia. Allison filed a third party claim against the District of Columbia and a counterclaim against the pilot for contribution. The District moved for summary judgment on the ground that the public duty doctrine precluded liability.

Viewing the evidence in the light most favorable to Allison, the District Court accepted the following as being true: more than twenty minutes elapsed between the time of the crash and the time the Harbor Patrol was prepared to dive; based upon the deposition testimony of Allison's medical expert, all three of the passengers died as a result of being submerged in the river for an extended period of time, rather than as a result of the crash itself; expert testimony established that the passengers would have had a better than fifty percent chance of survival if they had been removed from the wreckage within the first ten minutes after the crash; and expert testimony established that if the passengers had been rescued within more than ten but less than fifteen minutes it was possible, though unlikely, that they would have survived.

The District Court granted the District's summary judgment motion on the ground that the public duty doctrine protects a municipality from "essentially a claim of professional malpractice arising from a discretionary act committed by a police officer during a rescue operation." Thereafter, a jury re-

---

1. Section 11–723(a) provides:
   The District of Columbia Court of Appeals may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or the highest appellate court of any State, if there are involved in any proceeding before any such certifying court questions of law of the District of Columbia which may be determinative of the cause pending in such certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the District of Columbia Court of Appeals.

2. The United States Court of Appeals did not include a statement of facts in its certification order. See D.C.Code § 11–723(c). We have relied on the statement of facts set out in the briefs filed by the parties in this court and the joint appendix filed in the United States Court of Appeals. See Penn Mutual Life Ins. Co. v. Abramson, 530 A.2d 1202, 1208 (D.C.1987) ("we may consider as necessary whatever is contained in the record transmitted on certification, as well as the entire record before the certifying court") (footnote omitted).

turned verdicts against Allison on the survivors' claims and in favor of the pilot on Allison's contribution claim. Allison appealed the judgments entered against it after the unfavorable jury verdicts and the grant of summary judgment in favor of the District. The United States Court of Appeals affirmed in all respects, except for the claim by Allison against the District, which the United States Court of Appeals did not decide.[3] With respect to that claim, the court certified the following question to this court:

> Does the public duty doctrine render the District of Columbia immune from tort liability in a case in which the District police officers interfere with the private rescue efforts of civilians at the scene of an accident, thereby worsening the condition of the victims?

The question certified assumes, without deciding, that Allison can establish that the civilian scuba divers would have successfully reached the passengers earlier than the Harbor Patrol did and would, therefore, possibly have prevented the passengers from drowning. If the public duty doctrine applies, however, then the District would not be liable even if Allison were successful in making that showing.

## II.

■ Under the public duty doctrine, the District has no duty to provide public services to any particular citizen. *Hines v. District of Columbia*, 580 A.2d 133, 136 (D.C. 1990); *Warren v. District of Columbia*, 444 A.2d 1, 3 (D.C.1981) (en banc); W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 131, at 1049 (5th ed. 1984). Rather, "[t]he duty to provide public services is owed to the public at large, and, absent a special relationship between the police and an individual, no specific legal duty exists." *Warren*, 444 A.2d at 3. A "special relationship" may give rise to a "special duty" if there is: "(1) a direct contact or continuing contact between the victim and the governmental agency or official; and (2) a justifiable reliance on the part of the victim." *Platt v. District of Columbia*, 467 A.2d 149, 151 (D.C.1983) (citing *Warren, supra*, 444

A.2d at 11 (Kelly, J., concurring in part and dissenting in part)).

■ Allison contends that a special duty arose after the Harbor Patrol arrived and began rescue operations, when the officers barred the civilian rescuers from participating in the rescue operation. In support, Allison relies principally on *Johnson v. District of Columbia*, 580 A.2d 140 (D.C.1990), which involved the alleged negligent delivery of emergency ambulance services. In *Johnson*, three calls to the District's 911 number, over a span of twenty to thirty minutes, were made on behalf of a heart attack victim. *Id.* at 141. Emergency Ambulance Division firefighters arrived some thirty minutes after the first call. *Id.* The firefighters were ill-equipped for the particular emergency, and they allegedly administered cardiopulmonary resuscitation ("CPR") in a negligent manner. *Id.* at 143. Certified medical technicians of the trauma unit (ostensibly specialists for this type of emergency) arrived shortly after the arrival of the firefighters, and the victim was rushed to the hospital, where she later died. *Id.* at 141.

■ In reversing the entry of summary judgment in favor of the District, we held that "[t]he issue remains whether ... the plaintiff fairly asserted any affirmative actions by the firefighters which might create some liability." *Id.* at 143. The court reasoned that there is a distinction between (1) "the adequacy and timeliness of the dispatch" of emergency services, and (2) "the quality of services physically rendered to the victim." *Id.* at 142. With respect to the first of these considerations, the court held that a special duty does not arise simply because an individual requests emergency assistance. *See id.* at 142–43; *see also Wanzer v. District of Columbia*, 580 A.2d 127, 131–32 (D.C.1990) (holding that one-time call for ambulance does not establish a special relationship); *Hines, supra*, 580 A.2d at 136 (observing that "the mere fact that an individual has emerged from the general public and become an object of the special attention of public employees does not create a relationship which imposes a special legal duty"). Thus,

---

3. *See Joy v. Bell Helicopter Textron, Inc.*, 303    U.S.App.D.C. 1, 13, 999 F.2d 549, 561 (1993).

defects in the timeliness of dispatch or inadequacies in the would-be rescuers' ability to provide necessary services are not sufficient to create a special relationship. *See Johnson, supra,* 580 A.2d at 142 (citing *Hines, supra,* 580 A.2d at 136–37, and *Warren, supra,* 444 A.2d at 6–7).

Regarding the second consideration, however, the *Johnson* court observed that the real issue was whether the firefighters breached a duty of reasonable care to the victim in the actual administering of emergency services. *Id.* The court held that liability would lie if "some act of the [rescuers] in administering emergency [services] ... actually made [the victim's] condition worse than it would have been had the [rescuers] failed to show up at all or done nothing after their arrival. We have adumbrated this minimum requirement in the rescue context in discussing municipal liability for acts of 'affirmative negligence.'" *Id.* (citing *Warren, supra,* 444 A.2d at 7–8, and *Weeda v. District of Columbia,* 521 A.2d 1156 (D.C. 1987)) (footnote omitted).[4] The court· reasoned that acts of affirmative negligence relate to the special relationship requirement that a victim must justifiably rely on the acts of the government, since a "victim may arguably 'rely' on an emergency crew not to worsen [the victim's] condition, [whereas] no such reliance can fairly be based on the inaction or futile action" of the would-be rescuers. *Id.* at 143 (footnote omitted). Thus, *Johnson* stands for the principle that the protection from liability accorded by the public duty doctrine evaporates if, while delivering emergency services, members of the crew commit an act of affirmative negligence worsening a victim's condition. We cautioned in *Johnson,* however, "[t]hat is not to say that even acts worsening the victim's condition are always sufficient to form a basis of liability." *Id.* at 143 n. 4 (discussing *Nichol v. District of Columbia Metro. Police Dept,* 444 A.2d 1 (D.C.1981) (en banc) (companion case to *Warren, supra* )).

Like *Johnson,* this case raises issues as to both the timeliness and the adequacy of the delivery of emergency services by the Harbor Patrol. Allison concedes that there is no liability on that basis because of the public duty doctrine. Allison contends, however, that the rejection of assistance from the civilian volunteers amounted to affirmative negligence which, like the faulty administration of CPR in *Johnson,* renders the District liable because it falls outside the scope of the protection afforded by the public duty doctrine. We must determine, therefore, whether rejecting the offer of assistance was an integral part of the general duty to the public or whether that act created a special relationship giving rise to a special duty.

The District argues that *Nichol* is dispositive on that point. In that case, the plaintiff, who was sitting in his automobile while waiting at a traffic light, was accosted by several assailants who physically assaulted him. *Nichol, supra,* 444 A.2d at 3. After a police officer arrived at the scene, "[i]n response to the officer's direction, [the victim's] companion ceased any further efforts to obtain identification information of the assailants." *Id.* The officer, however, failed to obtain the identity of the assailants, and the victim was therefore unable to determine either directly or indirectly the names of those who had assaulted him. *Id.* Thereafter, the victim brought a negligence action against the District, contending the District was liable because the police officer's action prevented him from filing suit against the assailants because he did not know their identities. *Id.*

We affirmed the dismissal of the victim's action, holding that:

> [t]he officer's duty to get that identification was one directly related to his official and general duty to investigate the offenses. His actions and failings were solely related to his duty to the public generally and possessed no additional element necessary to create an overriding special relationship and duty.

*Id.* (footnote omitted). We also observed that where courts have held municipalities

---

4. *See also Morgan v. District of Columbia,* 468 A.2d 1306, 1312 (D.C.1983) (en banc) (observing that a special relationship may arise if "an individual assists law enforcement officials in the performance of their duties" or "where the police affirmatively engage the assistance of a particular individual and then fail to protect him") (citations omitted).

liable, "an additional element has been injected above the existing general public duty." *Id.* at 3 n. 2. Some "additional elements" that courts have found sufficient to create a special duty overriding public duty doctrine protection include: (1) a course of conduct, relied on by members of the public, of substituting school crossing guards; (2) the use of a victim to facilitate a police investigation; (3) negligent placement of a youth with known homicidal tendencies in a foster home; (4) the return of a victim to a scene of a crime for a show-up identification; and (5) the use of a citizen informant. *Id.*[5] In short, *Nichol* holds that "actions that are a 'necessary part of the on-scene responsibility' of government agents subject to the public duty doctrine 'add[ ] nothing to the general duty owed the public and fail[ ] to create a relationship which imposes a special legal duty.' " *Hines, supra,* 580 A.2d at 136 (citing *Nichol, supra,* 444 A.2d at 3) (alterations in original) (footnote omitted).

In the instant case, we conclude the Harbor Patrol officers' conduct was directly related to the officers' "on-scene responsibility" in conducting the rescue operation, *i.e.,* it was an integral part of the officers' general duty to the public and, therefore, did not create a special relationship. *See Nichol, supra,* 444 A.2d at 3. The Harbor Patrol officers were charged with the responsibility of conducting rescue operations in emergencies such as the one present here. Carrying out that responsibility necessarily required the exercise of discretion, on the part of the rescuers, concerning how they should proceed, which included making the judgment that only professional rescuers should take part. *See id.*[6] We agree with the observations of the District Court judge in the order granting the District's motion for summary judgment:

The issue that Allison seeks to put in front of the jury is whether the officers in this case acted as reasonably prudent police officers in preventing the civilians from undertaking the rescue. But the public duty doctrine prevents a jury from deciding precisely these types of issues.... [D]iscretionary acts during a rescue operation can not be later dissected at trial and subject to an expert's opinions as to whether, in hindsight, he acted as a reasonably prudent police officer.

*Joy, supra* note 3, 303 U.S.App.D.C. at 14, 999 F.2d at 562 (quoting the District Court Memorandum Opinion at 12–13) (alterations in original). In other words, allegations of negligent acts that "derive solely from [the Harbor Patrol's] status as police employees and from [Allison's] contention that [the Harbor Patrol] failed to do what reasonably prudent police employees would have done in similar circumstances" do not establish a special duty. *Nichol, supra,* 444 A.2d at 8. "The difference is between ordinary negligence on the one hand and a novel sort of professional malpractice on the other." *Id.*

Moreover, there was no "additional element" subjecting the victims to a greater risk. *Id.* at 3. The action of the Harbor Patrol officers may have been motivated by well-grounded concerns about the safety of both the passengers and the civilian scuba divers. As the United States Court of Appeals observed, "the actions of the Harbor Patrol officers may have been influenced by a variety of considerations—the danger of injury to the civilian divers, the danger that the civilian divers might have exacerbated the injuries of the passengers, and crowd control issues." *Joy, supra* note 3, 303 U.S.App. at 16, 999 F.2d at 564. Indeed, there was evidence that the helicopter came to rest upside down and that it was partially submerged so that the vehicle's landing gear was floating

---

5. The court relied on, respectively, *Florence v. Goldberg,* 44 N.Y.2d 189, 404 N.Y.S.2d 583, 375 N.E.2d 763 (1978); *McCorkle v. City of Los Angeles,* 70 Cal.2d 252, 74 Cal.Rptr. 389, 449 P.2d 453 (1969) (en banc); *Johnson v. State,* 69 Cal.2d 782, 73 Cal.Rptr. 240, 447 P.2d 352 (1968) (en banc); *Gardner v. Village of Chicago Ridge,* 71 Ill.App.2d 373, 219 N.E.2d 147 (1966); and *Schuster v. City of New York,* 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958).

6. *See also Hines, supra,* 580 A.2d at 137–38 (holding that emergency medical technicians' conduct, in undertaking assistance of victim, did not elevate risk of harm to victim over other community members); *cf. Wanzer, supra,* 580 A.2d at 131–32 (holding that a special relationship does not come into being when individual requests emergency assistance).

on the surface of the water. In addition, there was no indication that the Harbor Patrol officers had any way of knowing whether the would-be rescuers were trained, or were otherwise experienced, in rescuing those trapped as the victims were in this case. Given these circumstances, the use of civilian rescuers may have exposed the victims, the civilian rescuers, and the Harbor Patrol officers to an additional risk.[7] It may be, in hindsight, that the civilian rescuers might have prevented the passengers from drowning. But as the District Court judge observed, the exercise of discretion by on-scene personnel in a rescue operation should not be subject to later dissection at trial in the form of an expert's opinion as to whether on-scene personnel acted in a reasonable and prudent fashion.

Finally, we are aware of no authority holding that the rejection, by municipal emergency personnel, of on-scene assistance by the civilian volunteers creates a special duty which precludes application of the public duty doctrine. Appellant cites *Fochtman v. Honolulu Police & Fire Dep'ts*, 65 Haw. 180, 649 P.2d 1114 (1982), which imposed municipal liability because two police officers did not investigate a citizen's report of a flashlight frantically being waved on a nearby mountain ridge. The flashlight was apparently used as an emergency signal device by two injured hikers who were found dead the next morning. *Fochtman, supra*, 649 A.2d at

1115–16. The civilian who reported the light to the police testified that, but for assurances by the police, he would have personally investigated the area near where he had observed the light. *Id.* at 1116–17. An action was brought on the theory that a prompt investigation of the light source would have saved the hikers. *See id.* at 1116. Appellant's reliance on *Fochtman*, however, is misplaced because, under this court's precedent, municipal liability would be barred in that case by the public duty doctrine, since there the officers' "actions and failings were solely related to [their] duty to the public generally and possessed no additional element necessary to create an overriding special relationship and duty."[8] *Nichol, supra*, 444 A.2d at 3.

In conclusion, we hold that the public duty doctrine applies under the circumstances and, therefore, the District is not liable for the Harbor Patrol officers' conduct in ordering the civilian scuba divers out of the water and for declining their offer to assist in the rescue operation.

The Clerk is hereby directed to transmit a copy of this opinion to the United States Court of Appeals for the District of Columbia Circuit and to the parties.

*So ordered.*

---

7. Under the professional rescuer doctrine, "those engaged in rescue work as part of their employment may not, as a matter of law, recover for injuries sustained by them on the job." *Gillespie v. Washington*, 395 A.2d 18, 20 (D.C.1978) (citing *Black Indus., Inc. v. EMCO Helicopters, Inc.*, 19 Wash.App. 697, 577 P.2d 610 (1978), and *Maltman v. Sauer*, 84 Wash.2d 975, 530 P.2d 254 (1975) (en banc)). The policy behind this rule is that "the professional rescuer is held to have assumed the risks attending his [or her] work. Those dangers which are inherent in professional rescue activity, and therefore foreseeable, are willingly submitted to by the professional rescuer when he [or she] accepts the position and the remuneration inextricably connected therewith.'" *Id.* (quoting *Maltman, supra*, 530 P.2d at 257; citing *Spencer v. B.P. John Furniture Corp.*, 255 Or. 359, 467 P.2d 429 (1970)). *See also Young v. Sherwin–Williams Co.*, 569 A.2d 1173, 1175 (D.C.1990) (holding that professional rescuer assumes the inherently risky nature of the employment). It is an open question in this

jurisdiction, however, whether liability exists if *civilian* rescuers are injured while assisting professional rescuers. *See generally Morgan, supra* note 4, 468 A.2d at 1312 (police may be liable for failure to protect civilian used to assist officers in the performance of their duties).

8. Appellant's reliance on *Ross v. United States*, 910 F.2d 1422 (7th Cir.1990), *Jackson v. City of Joliet*, 715 F.2d 1200 (7th Cir.1983), and *United States v. Gavagan*, 280 F.2d 319 (5th Cir.1960), is also misplaced since those cases do not even consider the applicability *vel non* of the public duty doctrine. Finally, *Bloom v. City of New York*, 78 Misc.2d 1077, 357 N.Y.S.2d 979 (N.Y.Sup.Ct.1974), *Hoffer v. State*, 110 Wash.2d 415, 755 P.2d 781 (1988) (en banc), *Bailey v. Town of Forks*, 108 Wash.2d 262, 737 P.2d 1257 (1987) (en banc), and *Brown v. MacPherson's, Inc.*, 86 Wash.2d 293, 545 P.2d 13 (1975) (en banc), all cited by appellant, are also not applicable because these cases do not involve rescue situations.