Olga BRANDON, Administratrix of the
Estate of Frank Brandon, et al.

v.

CITY OF PROVIDENCE, et al.

No. 96–623–Appeal.

Supreme Court of Rhode Island.

March 5, 1998.

Steven P. Maguire; Forrest C. Crooks, Daniel McKinnon, Pawtucket, for Plaintiffs.

Michael Colucci, Warwick, Kevin F. McHugh, Providence, for Defendants.

Before WEISBERGER, C.J., and LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

On January 23, 1998, this case came before the Supreme Court pursuant to an order directing both parties to appear and show cause why the issue presented by this appeal should not be summarily decided. After reviewing the parties' memoranda and hearing their arguments, we perceive that cause has not been shown and shall therefore proceed to determine the merits of this appeal at this time.

The plaintiff, Olga Brandon (Olga), is the mother of the decedent, Frank Brandon (Frank), who brought this suit on behalf of his estate and on behalf of his minor child, Frank E. Redding. This suit alleges that Providence police officers (collectively defendants or officers), unreasonably and unlawfully prevented Frank from receiving medical treatment and that such interference was the proximate cause of his death. The police officers sought and obtained summary judgment in the Superior Court, and Olga now presses this appeal. Viewing the facts in the light most favorable to Olga, as we must, we determine that the following tragic events occurred.

On the evening of July 21, 1989, Frank was the victim of a drive-by shooting at the intersection of Hilton and Bogman Streets in Providence, a location approximately one-half mile from the Rhode Island Hospital. Shortly after the shooting, at approximately 9:30 p.m., Officer Steven Moran (Moran) of the Providence police department arrived at the crime scene. Once there, Moran observed Frank bleeding from a gunshot wound to the stomach in the front passenger's seat of a Camaro, and his brother, John Brandon (John), in the driver's seat, attempting to drive his brother to the nearby hospital. Moran immediately called for rescue personnel. Moran also advised John that the rescue squad would be arriving shortly and that John was not to drive away. After John persisted, a struggle ensued between John and Moran, during which Moran removed the keys from the Camaro's ignition. It was at this time that additional officers from the Providence police department arrived and

witnessed another of Frank's brothers, Rafael Brandon (Rafael), jump onto Moran's back in an apparent attempt to aid his brother John. Both John and Rafael were soon restrained by the officers, and upon the arrival of medical personnel, assistance was rendered to Frank.

The officers acknowledge that they prevented John from leaving the scene to drive to the nearby hospital. However, the officers insist that rescue was already on the way, that the actual identities and intentions of the persons purporting to help Frank were unknown at the time, and that the officers were safeguarding Frank's person.

Although the precise time frames differ slightly depending on their source, according to Olga, the Providence police department received a call for "shots fired" at 9:35 p.m., and a call for a rescue was made at 9:37 p.m. Within minutes an ambulance arrived at the scene and Frank received treatment for several minutes. The ambulance then departed for the hospital at 9:51 p.m., and arrived at the hospital at 9:55 p.m. Frank was pronounced dead at 10:35 p.m. because of a loss of blood that Olga contends was attributable to the amount of time it took Frank to obtain medical treatment. Olga filed suit, alleging that the officers' negligence deprived Frank of his right to movement, life, and liberty and also deprived his minor child of the companionship, love, affection, and support of his father. On appeal Olga asserts that defendants were grossly negligent in thwarting the brothers' attempt to transport Frank to the hospital and that had the officers acquiesced, Frank would have arrived at the hospital twenty minutes earlier. Although we are sympathetic to the Brandon family, we are of the opinion that the officers are immune from liability.

General Laws 1956 § 9–1–27, entitled "Police and firefighters—Immunity from liability," provides in pertinent part:

"No member of any police force or fire department of the state or any city or town * * * who while on duty and in the performance of that duty *voluntarily and gratuitously renders emergency assistance* to a person in need thereof * * * shall be liable for civil damages for any personal injuries which result from acts or omissions by the persons rendering the emergency care, which may constitute ordinary negligence. This immunity does not apply to acts or omissions constituting gross, willful, or wanton negligence." (Emphasis added.)

Olga contends that this statute is inapplicable to the case at bar because defendants were not affirmatively rendering emergency assistance but instead were preventing Frank from obtaining medical assistance. We do not interpret this statute so narrowly.

In this case upon arrival at the crime scene Moran advised John not to drive away because "rescue was on the way." Although Moran did not affirmatively render medical assistance, Moran did secure the crime scene and did safeguard Frank's person to ensure he would in fact receive treatment and would not be placed in any greater danger. Furthermore, in light of the fact that Moran arrived at the scene of a shooting unaware of the circumstances or of the identities of the individuals on the scene, it may well have been more harmful to Frank if Moran had released him to those purporting to be friends or relatives. It was not only reasonable but appropriate for Moran to secure both the scene and Frank pending the arrival of rescue personnel. It is these actions of safeguarding Frank's person until trained medical technicians arrived that we perceive to be within the ambit of § 9–1–27 and its requirement to "render[ ] emergency assistance." Moreover, even though immunity may be overcome by a showing of "gross, willful, or wanton negligence," Olga makes no such allegation in her complaint. Therefore, in these circumstances we conclude that "the exercise of discretion by on-scene personnel in a rescue operation should not be subject to later dissection at trial * * * as to whether on-scene personnel acted in a reasonable and prudent fashion." *Allison Gas Turbine Division of General Motors Corp. v. District of Columbia*, 642 A.2d 841, 846 (D.C.App.1994).

For the foregoing reasons the plaintiff's appeal is denied and dismissed. The judgment appealed from is affirmed, and the

papers in this case are remanded to the Superior Court.

BOURCIER, J., did not participate.