**Michael K. JOHNSON, Appellant,**

v.

**DISTRICT OF COLUMBIA, et al., Appellees.**

**No. 88–127.**

District of Columbia Court of Appeals.

Argued March 21, 1989.

Decided Sept. 28, 1990.

Mark L. Shaffer, Washington, D.C., for appellant.

Donna M. Murasky, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., was on the brief, for appellees.

Before BELSON, TERRY and STEADMAN, Associate Judges.

---

STEADMAN, Associate Judge:

This is the third of three cases decided this day dealing with grants of dismissal or summary judgment in favor of the District of Columbia on claims against the District relating to the District's provision of emergency ambulance services. The following opinion should be read in conjunction with its two companions, *Wanzer v. District of Columbia*, 580 A.2d 127 (D.C.1990), and *Hines v. District of Columbia*, 580 A.2d 133 (D.C.1990). We remand this case for further proceedings.

## I

The facts as asserted by appellant may be summarized as follows. On March 1, 1987, Darryl Johnson telephoned the District's 911 number at the request of Ms. Sadie Tolliver, with whom he lived. Ms. Tolliver had indicated that she felt weak and was in need of an ambulance. In response to Darryl Johnson's request for emergency assistance, the telephone dispatcher responded that he would send an ambulance. Soon after Mr. Johnson's first telephone call, Ms. Tolliver collapsed of a heart attack. When no ambulance arrived for "[a]t least ten to fifteen minutes" after the first telephone call, Mr. Johnson made a second call and was again told that an ambulance was "on the way". No ambulance arrived and Miguel Johnson, Darryl's brother, made a third call "[a]pproximately twenty to thirty minutes" after the first call. Firefighters of the Emergency Ambulance Division ("EAD") finally arrived, "[a]pproximately thirty or more minutes" after the first call.

The firefighters had no equipment with them other than an oxygen mask and a mouth-to-mouth resuscitation mouthpiece. They walked slowly to the house, despite Mr. Johnson's entreaties, and acted "casually and slowly" in approaching the victim. One firefighter lifted the victim's eyelid with the rubber antenna of his radio

rather than touch her. The same firefighter made an undirected comment to "move her to the living room," which Mr. Johnson and his brother, Miguel, did. The firefighters then administered cardiopulmonary resuscitation. Some time after the firefighters had arrived, certified medical technicians of the trauma unit arrived and attached the victim to a machine. These technicians rushed the victim to the hospital where she died. A doctor stated that he could have saved her if "we had gotten to her a few minutes sooner."

Michael K. Johnson, as personal representative of the estate of Ms. Tolliver and as next friend, next of kin and natural father of Taujhis Alhazz Tolliver, a minor child and son of Ms. Tolliver, sued the District of Columbia in tort. On motion of the District, the trial court without opinion dismissed appellant's amended complaint and granted summary judgment for the District. This appeal followed.

## II

Many of appellant's arguments are the same as those that were made, and we reject today, in the two companion cases. The public duty doctrine applies to conduct of the District's Emergency Ambulance Division in the same way that it applies to conduct of the police and fire departments, notwithstanding the fact that the District may charge a user fee for ambulance service. *Wanzer, supra*, 580 A.2d at 129–131. Nor is ambulance protection distinguishable on the ground that it is a proprietary function[1] or that its operations are not responses to the acts of third parties. Furthermore, agency protocols and procedures "cannot create a special duty to a protected class" of the sort found in *Turner v. District of Columbia*, 532 A.2d 662, 668–74 (D.C.1987). *Wanzer, supra*, 580 A.2d at 133.

Appellant also argues, as did the appellant in *Hines, supra*, that on the facts here

---

**1.** Whether the District acts in a uniquely governmental capacity or as one of several business competitors does not bear on the underlying policy of the public duty doctrine to protect the government from interference in its "legislative or administrative determinations concerning allocation of" limited public resources. *Warren v. District of Columbia*, 444 A.2d 1, 4 (D.C.1981) (en banc).

the requisite "special relationship" came into being because of a "direct contact" between the District and the victim, creating a specific legal duty sufficient to render the public duty doctrine inapplicable in this case. *See Morgan v. District of Columbia,* 468 A.2d 1306, 1314 (D.C.1983) (en banc);[2] *Platt v. District of Columbia,* 467 A.2d 149, 151 (D.C.1983). He contends, specifically, that a special relationship arose at any one of three points in time: first, when the telephone dispatcher first assured that help would be sent; second, when the dispatcher again assured that help would be sent; and third, after the firefighting crew arrived at the scene. Analytically, the first two of these contentions differ from the third. The first two concern the adequacy and timeliness of the dispatch; the third may concern the quality of services physically rendered to the victim.

The two companion cases and our en banc decision in *Warren, supra* note 1, plainly negate appellant's first two contentions. "[C]hallenges to the adequacy and timeliness of the dispatch of emergency equipment," *Hines, supra,* 580 A.2d at 136, fail to meet the requirements for a special relationship, even where a dispatcher has assured that help is on its way. *Id.* at 137; *Warren, supra* note 1, 444 A.2d at 6–7. In *Warren,* two women called the police to request emergency assistance as a burglary was in progress at their rooming house. The dispatcher assured them that help would be on the way. A second call resulted in the same assurance. Because of dispatcher error, however, the first response was inadequate and the second call resulted in no response. Believing that the police had responded, the women reacted in such a way as to alert the intruders to their presence. They were captured and severely abused. Despite these facts, this court affirmed the dismissal of the plaintiffs' complaint on the ground they had failed to establish the requisite special relationship. *Id.* at 4.

■ In connection with his third argument, that the special relationship arose after the firefighters arrived at the scene, appellant states that "there is a valid question of breach of the duty of reasonable care under the circumstances regarding [the firefighters'] conduct at the residence" which should give rise to liability. While it is true that appellant has generally alleged a failure by the firefighters to conform to applicable standards of care, the only relevant issue is whether any affirmative acts of the firefighters worsened Ms. Tolliver's condition. That is, appellant must show that some act of the firefighters in administering emergency medical assistance to Ms. Tolliver actually made Ms. Tolliver's condition worse than it would have been had the firefighters failed to show up at all or done nothing after their arrival. We have adumbrated this minimum requirement in the rescue context in discussing municipal liability for acts of "affirmative negligence." *Warren, supra* note 1, 444 A.2d at 7–8 (duty may be established in a case of "affirmative negligence," where, for example, there is "negligent handling of a police dog, negligent operation of a police vehicle, [or] negligent use of a police weapon"). *Cf. Weeda v. District of Columbia,* 521 A.2d 1156 (D.C.1987) (no indication that public duty doctrine would bar action based on ambulance crew's negligent act of extricating plaintiff from wreckage of automobile if such extrication worsened plaintiff's injury).[3]

The requirement that the emergency personnel's active conduct actually and directly worsen the victim's condition also finds

---

**2.** In *Morgan,* we stated that the two requisites for fashioning a special relationship are: "(1) a specific undertaking to protect a particular individual, and (2) justifiable reliance by the plaintiff." *Morgan, supra,* 468 A.2d at 1314.

**3.** The requirement that the defendant's conduct worsen the plaintiff's condition may also be found in some articulations of the volunteer

liability doctrine. *See* RESTATEMENT (SECOND) OF TORTS §§ 323, 324 (1965); W. KEETON, D. DOBBS, R. KEETON, D. OWEN, PROSSER & KEETON ON THE LAW OF TORTS § 56, at 378 (5th ed. 1984) ("duty to avoid any affirmative acts which make [the victim's] situation worse"). We note, however, that we have been unwilling to adopt the volunteer doctrine as an all-purpose guide to public liability. *Warren, supra* note 1, 444 A.2d at 7.

expression in the requirement that in order for a special relationship to arise there must be "justifiable reliance by the plaintiff." *Morgan, supra,* 468 A.2d at 1314. While a victim may arguably "rely" on an emergency crew not to worsen her condition,[4] no such reliance can fairly be based on the inaction or futile action of the firefighters in this case. At bottom, at least the great bulk of plaintiff's assertions [5] are simply permutations of the issue of the "adequacy and timeliness" of emergency aid and cannot, as we said in *Hines,* form the basis of liability.

■ The issue remains whether, in the papers presented to the trial court, the plaintiff fairly asserted any affirmative actions by the firefighters which might create some liability within the framework set forth above. In reviewing a motion for summary judgment, "the court must examine all facts in the light most favorable to the non-moving party. The non-moving party is also entitled to all favorable inferences drawn from those facts. Thus, any doubt is to be resolved in favor of the party opposing summary judgment." *Thompson v. Shoe World, Inc.,* 569 A.2d 187, 189 (D.C.1990) (citations omitted). Applying these principles of review, we simply cannot say that the District was entitled to summary judgment on the record before us.

We note in particular that in their statement of facts in opposition to the District's

motion, as well as in the complaint, appellants asserted that "the firefighter placed the oxygen mask over Ms. Tolliver's nose and mouth and appeared to give her CPR type of therapy by pressing on her chest." The complaint further alleged that the firefighters "failed to properly assess Ms. Tolliver's condition, failed to provide proper cardiopulmonary resuscitation, [and] failed to properly manage Ms. Tolliver's airway or otherwise comply with reasonable standards of emergency medical care." While such facts could not sustain liability insofar as they merely represent the failure of the firefighters to perform any particular step that might have alleviated Ms. Tolliver's condition, such is not the case if any such step actually taken affirmatively worsened her physical condition. If on remand a clarification of plaintiff's position cannot manifest the existence of any such material facts in dispute, summary judgment for the District would be in order.

We note also that the District's motion was made when only limited discovery had taken place. As the District acknowledged in its response to the plaintiffs' opposition to the motion, plaintiffs argued to the trial court that the motion should not be granted in order to give them time to develop the facts through discovery to demonstrate the "special relationship" needed to remove the case from the application of the public duty doctrine.[6] The District, in its response, took the position that "there is no need of

4. That is not to say that even acts worsening the victim's condition are always sufficient to form a basis of liability. In *Nichol v. District of Columbia Metropolitan Police Department,* 444 A.2d 1 (D.C.1981) (en banc), a companion case to *Warren,* the victim was assaulted in his automobile and a police officer later came to his assistance. "In response to the officer's direction, appellant's companion ceased any further efforts to obtain identification information of the assailants." *Id.* at 3. The officer then failed to obtain the information, leaving appellant unable to institute legal action against his assailants. Appellant sued the District in negligence. Observing that the "officer's duty to get [the assailant's identification] was one directly related to his official and general duty to investigate the offenses," we held that his "actions and failings ... possessed no additional element necessary to create an overriding special relationship and duty." *Id.*

5. The gravamen of appellant's complaint clearly concerns the "timing and adequacy" of the assistance: for example, the firefighters' "dilatory, unhelpful behavior," the fact that the firefighters were "unsure what to do" and their delay of several minutes before "going through the motions." In particular, appellant's emphasis of the treating doctor's statement that he could have saved the victim had she arrived a few minutes earlier indicates that timeliness of response was at the heart of appellant's claim.

6. Although not directly alluding to the discovery issue, the plaintiffs' opposition asserted that if the special relationship were held to arise after the firefighters arrived at the scene, "[t]he standard of care and liability analysis would focus solely on the quality of emergency care provided by the firefighters before the other units arrived."

144

discovery for that purpose." The trial court was in apparent agreement in granting the motion several weeks thereafter. It is not obvious, however, that opportunity for further discovery would be irrelevant in light of the principles discussed above.

Accordingly, the case is remanded for further proceedings consistent with this opinion.

*So ordered.*