**Willie L. HINES, et al., Appellants,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 88–277.

District of Columbia Court of Appeals.

Argued March 21, 1989.
Decided Sept. 28, 1990.

Gary S. Freeman, with whom Jack H. Olender, Washington, D.C., was on the brief, for appellants.

Donna M. Murasky, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before BELSON, TERRY, and STEADMAN, Associate Judges.

BELSON, Associate Judge:

This is an appeal from a grant of summary judgment in a wrongful death and survival action. Appellant Willie L. Hines, decedent's personal representative, sued the District of Columbia for damages arising from the alleged negligence of the District in relation to the dispatch of emergency medical care and transportation to Faith Z. Gary, now deceased. Appellant contends that the emergency services provided were neither timely nor adequate to the situation. Concluding that the public duty doctrine shields the District from liability, we affirm the trial court's grant of summary judgment in favor of the District of Columbia.

When Faith Gary lost consciousness at her home early one morning, appellant Hines called the District's emergency number, 911, to request assistance. In response to the dispatcher's questions, Hines said that Gary was unconscious but breathing, stated her age, and said that she had been taking some kind of medication. Seven minutes later, a basic life support unit arrived at the home. There was evidence that an advanced life support unit and an engine company were available to respond from the same station house at the time the basic unit was dispatched.[1] The first ambulance crew; consisting of two emergency medical technicians (EMTs), arrived at the scene, assessed Gary's condition, and began cardiopulmonary resuscitation (CPR). Subsequently, one of the two EMTs went out to the ambulance to get a stretcher and to radio a request for an advanced life support unit and an engine company. The dispatcher replied "Okay 16."[2] Ten minutes later, as one EMT continued to administer CPR at the home, the other telephoned 911 to find out how soon the advanced unit would arrive; upon receipt of that call, an advanced life support unit and an engine company were dispatched from the station house closest to Ms. Gary's home. Within three minutes of dispatch, both had arrived at the scene. Personnel from the advanced unit immedi-

---

**1.** Appellant explains the difference between basic and advanced life support units as follows:

Paramedics are assigned to [advanced life support] units because they are trained to provide advanced life support such as CPR, airway insertion, intravenous therapy, drug administration, EKG interpretation and defibrillation. EMTs [emergency medical technicians] are assigned to basic Units because they are trained only to provide basic life support such as patient assessment, CPR and transport.

**2.** "Okay 16" means that the dispatcher acknowledged the transmission. Plaintiff submitted a transcript of the radio conversation that indicated that unintelligible static was followed by the words "ambulance 16." The dispute as to the content of the tape is not material to the outcome of this appeal.

ately administered advanced life support, and transported Ms. Gary to D.C. General Hospital within three minutes. She was pronounced dead less than two hours after her arrival at the hospital.

Appellant seeks to hold the District liable for Ms. Gary's death because its agents, he contends, responded negligently to his request for help. He argues that the District owed Ms. Gary a duty of professional care by virtue of its employees' undertaking to treat her. He further argues that the level of emergency services initially provided was inadequate to the situation as described to the dispatcher, and that the first set of technicians should have transported Ms. Gary to the hospital for more advanced services when they realized that the advanced life support ambulance unit was delayed. These deficiencies, he argues, establish a breach of the duty the District owed Ms. Gary, and, because that negligence proximately caused Ms. Gary's death, the District must respond in damages. In affirming, we observe that appellant's claims are, in essence, challenges to the adequacy and timeliness of the dispatch of emergency equipment.

■ In order to survive the District's summary judgment motion, appellant had to show that the District was not shielded from liability by the public duty doctrine. Under that doctrine, a government and its agents owe no duty to provide public services to particular citizens as individuals. Instead, absent some "special relationship" between the government and the individual, the District's duty is to provide public services to the public at large. *See, e.g., Turner v. District of Columbia,* 532 A.2d 662 (D.C.1987); *Morgan v. District of Columbia,* 468 A.2d 1306 (D.C.1983) (en banc); *Platt v. District of Columbia,* 467 A.2d

149 (D.C.1983); *Warren v. District of Columbia,* 444 A.2d 1 (D.C.1981) (en banc). The doctrine operates to shield the District and its employees from liability arising out of their actions in the course of providing public services. Appellant acknowledges that the public duty doctrine applies in the case of such services as police and fire protection, but advances several arguments why it should not apply to the Emergency Ambulance Division (EAD).

Appellant would distinguish ambulance service from police and fire protection on the basis that emergency medical attention is summoned for and focuses on a particular individual, whereas the duty to prevent crime and protect against fires is owed to the public at large. We disagree. Citizens frequently call the police to their homes to respond to emergencies that involve a particular individual. *See, e.g., Warren, supra.* The same is true of the fire department. Furthermore, EAD crews frequently respond to accidents that occur in public places, *see, e.g., Weeda v. District of Columbia,* 521 A.2d 1156 (D.C.1987), along with police and fire personnel. Individual citizens may call for all three services by dialing the same emergency telephone number, 911.

■ Our case law makes it clear that the mere fact that an individual has emerged from the general public and become an object of the special attention of public employees does not create a relationship which imposes a special legal duty. We have held that actions that are a "necessary part of the on-scene responsibility" of government agents subject to the public duty doctrine "add[ ] nothing to the general duty owed the public and fail[ ] to create a relationship which imposes a special legal duty." *Warren, supra,* 444 A.2d at 3.[3]

---

**3.** The distinction appellant raises between discretionary and ministerial acts by government agents is not relevant here. It is, as we discuss below, relevant to the doctrine of sovereign immunity, but that is not a part of this case. The cases appellant cites in which the distinction is relevant to whether the District can be held liable relate to the performance of administrative functions rather than hands-on delivery of assistance to citizens involved in emergencies. *Compare Platt, supra, with Chandler v. District*

*of Columbia,* 404 A.2d 964 (D.C.1979) (decision to close certain fire stations discretionary because "there is no reason to believe a jury would render a sounder decision than those officials chosen, qualified, and prepared to make [such decisions]."); *Rieser v. District of Columbia,* 183 U.S.App.D.C. 375, 563 F.2d 462, *rehearing en banc granted and panel opinion vacated* (1977) (jury issue as to District's liability for negligence of parole officer in failing to notify employer of

This point is driven home by the distressing facts set forth in our opinion in *Warren v. District of Columbia* rejecting a claim of special relationship.

In *Warren*, a woman called the police to request emergency assistance because a burglary was in progress on a lower floor of her rooming house. The dispatcher assured the caller that help was on the way. The resulting broadcast included an erroneous code and did not identify the call as a crime in progress. Although four squad cars responded, and the caller and another woman saw a police car drive by their residence, the police did no more than knock on the door of the house. When no one answered, the officers left. A second request for emergency help led to a second assurance that help was on the way. However, the dispatcher recorded the call as "investigate the trouble" and did not dispatch it to any officers. The two women believed that police might be in the house as a result of their second call for help. They therefore shouted downstairs to their neighbor, thereby alerting the intruders to their presence in the house. The two women were then held captive along with their neighbor for fourteen hours during which time they were the victims of a series of violent sexual assaults. Their action against the police department for negligent failure to provide police services ended in a dismissal for failure to state a claim because there was no "special relationship out of which a duty to specific persons arises." *Warren, supra*, 444 A.2d at 4. In the case before us, Faith Gary had not entered into a relationship with District employees in the emergency care context that was significantly different from the relationship entered into by the unfortunate plaintiffs in *Warren*.

■ Appellant also argues that the public duty doctrine does not apply be-cause, unlike police and fire personnel, EAD personnel do not exercise discretion in carrying out their duties. While this court has frequently applied the distinction between discretionary and ministerial functions to cases involving potential civil liability of the District of Columbia for the results of administrative decisions, *see, e.g., Chandler v. District of Columbia*, 404 A.2d 964 (D.C.1979) (District owes no duty of care for administrative decision to close certain fire stations), we have not applied it to the public duty doctrine. The court in *Chandler* considered the distinction between discretionary and ministerial functions as it related to the special form of sovereign immunity accorded the District as a municipality.[4] *See also District of Columbia v. Owens–Corning Fiberglas Corp.*, 572 A.2d 394 (D.C.1989). We decline to make that distinction a factor in cases involving hands-on delivery of emergency services to citizens by District agents.[5] We conclude that the public duty doctrine insulates the EAD in essentially the same manner as the police or fire departments. *See Wanzer v. District of Columbia*, 580 A.2d 127, 131.

■ Our analysis cannot end here, however. Courts have recognized several exceptions to the public duty doctrine, and we must determine whether appellant falls within any of those exceptions. For example, this court and many others have held that the doctrine does not operate to shield the official actions of the police when there is " 'active use' of a private citizen in the investigation, arrest, or prosecution of a criminal." *Morgan, supra*, 468 A.2d at 1312–13 (citing cases). In such instances, the actions of the police expose a citizen to a risk he or she would otherwise not face. Appellant contends that in undertaking to help Ms. Gary, the District "significantly

---

parolee's criminal record), *opinion reinstated as modified*, 188 U.S.App.D.C. 384, 580 F.2d 647 (1978).

**4.** The U.S. Court of Appeals for the D.C. Circuit has applied the distinction in the same way. *See, e.g., Rieser v. District of Columbia, supra.*

**5.** We also find without merit appellant's arguments that the fee customarily charged for am-bulance service, D.C.Code § 4–316 (1988 Repl.), sets the EAD apart from police and fire protection, and that the public duty doctrine "generally immunizes a municipality against injury caused by third parties, usually a criminal," as distinguished from an employee of the District. *See Wanzer, supra*, 580 A.2d at 131.

increased the risk of harm to her over other members of the community if it failed to act reasonably." But the deployment of emergency services to Gary is different in nature from situations in which a citizen is persuaded to be of "active use" in police work. *See, e.g., Christy v. City of Baton Rouge,* 282 So.2d 724 (La.App.1973) (liability found for police failure to protect citizen who assisted in arrest). The exception for increased risks to citizens has so far been confined to instances of enlistment of citizens in law enforcement. *See, e.g.,* McQuillin, Municipal Corporations § 53.81b (1984). Appellant has not persuaded us that this exception should be extended to emergency assistance cases like the one before us.

■ We are also unpersuaded by appellant's argument that decedent is excepted from application of the public duty doctrine because she was a member of a special class of persons to whom a legal duty is owed. This court has noted that "there are at least two ways to demonstrate the existence of a 'special relationship' between the [District] and the injured party...." *Turner v. District of Columbia,* 532 A.2d 662, 667 (D.C.1987). These are direct or continuing contact between the victim and the governmental agency or official, a theory we have already discussed, and "a statute that prescribes 'mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole.'" *Turner, supra,* 532 A.2d at 667 (quoting *Morgan, supra,* 468 A.2d at 1314).

Appellant argues that the regulations, Mayor's order, and protocols applicable to the District's Emergency Ambulance Division create such a class of individuals— "persons who are seriously ill or injured and who receive emergency medical care and transportation by the Emergency Ambulance Division." Appellant supports this argument by analogy to the source of the duty in *Turner,* that is, the Child Abuse Prevention Act, D.C.Code §§ 6–2101–2127 (1989 Repl.). We find the analogy unpersuasive. Virtually every citizen of the District could find himself or herself in need of assistance from the EAD at one time or another; if there is a particular "class" of citizens who benefit, its members are distinguished from the general public only in that they are temporarily in need of emergency services. In this, they do not differ from citizens who find themselves in need of emergency police or fire services. *See Wanzer v. District of Columbia, supra,* 580 A.2d at 132–133. All of us may be temporary members of one or more of these "classes" at some time. There exists no "class" in the sense that would justify invoking the special relationship exception to the public duty doctrine.

■ Courts have also recognized an exception to the public duty doctrine where there is justifiable reliance on a specific undertaking to render aid. Appellant argues that there was a special relationship between the District and Gary by virtue of Hines' telephone call as well as the arrival and efforts of the basic life support unit. His main authority for this contention is a New York holding, *Florence v. Goldberg,* 44 N.Y.2d 189, 375 N.E.2d 763, 404 N.Y. S.2d 583 (1978). This court has read *Florence* to state that an exception to the public duty doctrine arises from the combination of (1) a specific undertaking by a government agent to provide help or protection to a specific individual or group and (2) that individual's resulting particularized and justifiable reliance. *Morgan, supra,* 468 A.2d at 1313–14; *see also Akins v. District of Columbia,* 526 A.2d 933 (D.C.1987).

In *Morgan,* we declined to find the factors necessary to invoke the *Florence* exception to the public duty doctrine.[6] In

---

6. *Morgan* involved an action by Mrs. Garnett Morgan, the wife of a police officer, who had warned the officer's superior, Captain Tiernan, that her husband had threatened her with his service revolver. Declining to file a formal action against her husband, Mrs. Morgan asked her husband's superior to keep her husband away from her. Thereafter, Mrs. Morgan moved out of the family residence in Maryland and into an apartment within the District with an unlisted telephone number, and concealed her new address from her husband. Three months later, after an altercation, the husband shot his wife, his son and a police officer, injuring them, and shot and killed another. Mrs. Morgan, among others, then filed an action for

this case, likewise, there is no undertaking to a specific individual or "a special class of persons," *Morgan, supra,* 468 A.2d at 1314. As for the second *Florence* element, it is not present here because without a special duty there can be no justifiable reliance. In *Florence,* the mother of the child who was struck by a taxicab while crossing the street had observed for weeks that the intersection in question was attended by a school crossing guard. In addition, regulations provided that if an absent guard could not be replaced, the police department would notify the school principal. Assuming that this court would follow *Florence, see Turner, supra,* 532 A.2d at 671–72, we observe that in the instant case there is no action or omission in reliance on the part of Hines or Gary comparable to the mother's allowing her child to walk to school alone because she knew the crossing guard would be at the busy intersection. Thus, we find without merit appellant's attempt to bring this case within the *Florence* exception to the public duty doctrine.

 The essence of appellant's complaint is that the District failed to provide the decedent "with adequate and timely emergency care." This assertion flows from the fact that the unit that responded to Hines' call for emergency assistance was a basic life support unit rather than an advanced unit. As the trial court noted in its Memorandum, Order and Judgment, "the acts alleged as the basis for the negligence suit against the District relate solely to the adequacy and timeliness of the dispatch of emergency ambulance and life support equipment and personnel." The court further noted that this case involved "[n]o claim ... that in providing medical treatment to Ms. Gary, the EMTs committed malpractice in violation of applicable standards of care governing their conduct." Cf. *Johnson v. District of Columbia,* 580

A.2d 140, and *Weeda v. District of Columbia, supra* (D.C. could be held liable for negligent acts of EAD personnel in administering emergency medical care; public duty doctrine not raised).

Appellant has argued, however, that when the personnel of the basic unit on the scene recognized that more advanced care was not arriving at Gary's side in timely fashion, they should have transported Gary to the advanced care available at a hospital. Even aside from the testimony of the EMT that this would have entailed an undesirable interruption of CPR, it can be seen that this argument is no more than the converse of not bringing adequate equipment to the stricken citizen. We agree with the observations of the motions judge on this and the preceding point:

In an effort to circumvent the public duty doctrine, plaintiff has attempted to couch some of his allegations in traditional negligence terms—such as the failure of the EMT's "to properly resuscitate decedent" or the "failure to properly examine and evaluate decedent's critical condition." Boiled down to their essense [sic], however, each of these claims amounts to the same basic allegation: the wrong unit was dispatched; the call for the correct unit (advanced life support) was not transmitted properly (an alleged equipment failure); the EMT's waited too long before realizing that the correct unit was not coming and placing a second call; and the EMT's should have moved Ms. Gary immediately with only their basic life support equipment when they knew or should have known that the advanced life support equipment was taking too long. As plaintiff's counsel conceded at oral argument on the motion, all of these alleged failures relate solely to the timeliness of the dispatch of emergency equipment or the adequacy of the equipment dispatched. These responses to calls for emergency

negligence and wrongful death against the District of Columbia on the theory that the police had entered into a special relationship with her and had agreed to protect her from her violent husband as a result of her discussions with her husband's superior. In applying the two factors in *Florence, supra,* this court concluded that the

police did not undertake, and were not asked by Mrs. Morgan, to guard her from potential harm from her husband. *Morgan, supra,* 468 A.2d at 1318. Accordingly, this court held that no special relationship had been created by the police that came within an exception to the public duty doctrine in *Morgan.*

assistance are simply not actionable under the public duty doctrine....

Memorandum, Order and Judgment, January 26, 1988, at 3–4 n. 1.[7]

In light of the foregoing considerations, we conclude that the actions of the District and its employees in connection with the dispatch of medical care, equipment and transportation to Gary were shielded by the public duty doctrine. Appellant, therefore, could not establish a *prima facie* case of negligence against the District. The trial court appropriately granted the District's motion for summary judgment.

*Affirmed.*

---

7. The trial judge's observations underscore an important difference between this case and *Johnson.* Here, after considerable discovery had been taken, the trial judge was in a position to reject the general indication in pleadings that some specific negligence had occurred after the District's employees were caring for decedent, with resultant affirmative harm to decedent. In *Johnson,* the generality of the pleadings remained unsupported by specific facts, possibly because of the absence of complete discovery.