**Judith C. BRIGGS, Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al. Defendants.**

**No. CIV. 01–1876(RJL).**

United States District Court, District of Columbia.

Feb. 13, 2003.

Calvin Steinmetz, Washington, DC, for Judith C. Briggs.

Fredric Howard Schuster, Robert John Kniaz, Washington Metro. Area Transit Authority, Washington, DC, for Washington Metro. Area Transit Authority.

E. Louise R. Phillips, Office of Corp. Counsel, D.C., Washington, DC, for District of Columbia.

Keith Michael Bonner, Andrew J. Marcus, Carolyn Israel Stein, Bonner, Kiernan, Treach & Crociata, Washington, DC, for Washington, Convention Center Authority, Clark Construction Co., Inc., Sherman R. Smoot Co.

### Memorandum Opinion and Order

LEON, District Judge.

Before the Court is a motion to dismiss by defendant District of Columbia ("the District"). The plaintiff, the duly appointed Personal Representative of the Estate of Gregory Derringer, has filed wrongful death and survival claims, arising from the murder of Gregory Derringer by an unknown assailant. The District seeks to dismiss itself on the ground that it is immune from the allegations pursuant to the public duty doctrine, and because the District cannot be liable for the intervening acts of third parties. For the reasons set forth below, the Court grants in part, and denies in part, the District's motion to dismiss.

## I. Background

On August 20, 2000, Gregory Derringer ("decedent") was murdered by an unknown criminal assailant outside the entrance to the Mt. Vernon Square Metro station. According to the plaintiff, the neighborhood surrounding the station was a high-crime area. During the time that decedent was murdered, the various defendants—Washington Metropolitan Area Transit Authority ("WMATA"), the District, the Washington Convention Center, Clark Construction Company, and Sherman R. Smoot Company—were constructing a new convention center, which required enclosing the Metro station's entrance with metal fencing and enclosing the area surrounding the station's escalators with plywood approximately two stories high. One of the two lights inside the wooden enclosure was not functioning on the night the murder occurred, and there was no officer staffing the police substation near the station's entrance at the time of the murder. The decedent was stabbed to death inside the wooden enclosure surrounding the escalator.

Plaintiff Judith Briggs, the duly appointed personal representative of the decedent's estate, filed a wrongful death claim pursuant to D.C.Code § 16–2701 et seq. (2001) and a survival claim pursuant to D.C.Code § 12–101 et seq. (2001). Specifically, she alleges that there was a foreseeable risk that third persons would engage in criminal activity in the enclosed, poorly lit station entrance. Thus, according to the plaintiffs, the defendants were negligent in constructing an unsafe and poorly lit wooden enclosure with inadequate security. As a result of the defendants' alleged negligence, Mr. Derringer was murdered and his family has been deprived of his accumulated earnings and wealth, and sustained pain, suffering, and various expenses.

The action was originally filed on or about August 21, 2001, in the Superior Court of the District of Columbia. On August 31, 2001, Defendant WMATA removed the case to the District Court for the District of Columbia because the WMATA Compact, *see* D.C.Code § 9–1107.01 (2001), specifies that the United States District Courts have original jurisdiction over suits against WMATA.

On November 19, 2001, the District filed a motion to dismiss the complaint arguing that the District is immune from the allegations pursuant to the public duty doctrine and that D.C. cannot be liable for the intervening acts of third parties. The case was transferred to this Court on May 15, 2002.

## II. Discussion

### A. Public Duty Doctrine

The District contends that the complaint should be dismissed because the District. is immune from the plaintiff's allegations pursuant to the public duty doctrine. The Court disagrees. Under the public duty doctrine, D.C. owes "no duty to provide public services to particular citizens as individuals." *Hines v. District of Columbia*, 580 A.2d 133, 136 (D.C.1990) (citing *Turner v. District of Columbia*, 532 A.2d 662 (D.C.1987)); *see Powell v. District of Columbia*, 602 A.2d 1123, 1125, 1128 (D.C.1992). Thus immunity from tort liability under the public duty doctrine, unlike under the question of sovereign immunity, applies only to "actions . . . taken in the course of providing public services." *See Joy v. Bell Helicopter Textron Inc.*, 999 F.2d 549, 561 (D.C.Cir.1993) (citing *Hines*, 580 A.2d at 136). For example, the D.C. Court of Appeals has found that the doctrine applies to police services, *see Morgan v. District of Columbia*, 468 A.2d 1306 (D.C.1983) (en banc), and ambulance services, *see Hines*, 580 A.2d at 136. In

other words, to have immunity under the public duty doctrine, the plaintiff must allege that one of the city's public services failed to protect the decedent. *See District of Columbia v. Evans*, 644 A.2d 1008, 1017 n. 8 (D.C.1994) (finding that the public duty doctrine did not apply because there was "no allegation of failure to protect").

■ Here, the plaintiff is not alleging that the defendant, through its police force, failed to protect the decedent. Instead, the plaintiff is alleging that the District negligently constructed and maintained a makeshift enclosures around the Metro station. *See* Compl. ¶ 19 ("Defendants breached their duty to Decedent by, among other things, constructing an unsafe and poorly lit wooden enclosure surrounding the entrance, failing to maintain security at the entrance to the Station, failing to take adequate precautions for the safety of the patrons and invitees, and failing to eliminate hiding places by the entrance to the Station where those seeking to engage in criminal activity could carry out such acts."); *id.* ¶ 15 (alleging that there was a lack of lighting); *id.* at 21 (alleging that there was a foreseeable risk that third persons would engage in criminal activity in "enclosed, poorly lit entrance"). Due to the District's negligence, the plaintiff argues, it was foreseeable that an unknown criminal person would commit a crime against pedestrians in the enclosure. The type of negligence alleged, however, is not related to the delivery of any public service, such as the police,[1] but is due to their approval and acceptance of the

actions of those who designed and maintained the enclosures required for the construction of the convention center. Such actions do not bar tort liability against the District under the public duty doctrine.

### B. Discretionary Function Exception

■ In a footnote in its reply brief, the District notes that to the extent that the plaintiff is alleging that it improperly designed the makeshift enclosure, it would be immune because the act of constructing the convention center was discretionary, not ministerial. Def. District's Reply to Pl.'s Opp'n to its Mot. to Dismiss at 2 n. 2. It is true that the District would be entitled to sovereign immunity if the government act in question called for the "highest degrees of discretion and judgment." *Spencer v. General Hospital*, 425 F.2d 479, 482 (C.A.D.C.1969) (en banc). For a court to find than an act is discretionary, thus entitling the municipality to immunity, the court must determine that the act involves the formulation, as opposed to the execution, of policy. *See Rieser v. District of Columbia*, 563 F.2d 462, 475 (D.C.Cir. 1977); *McKethean v. Washington Metropolitan Area Transit Authority*, 588 A.2d 708, 715 (D.C.1991). A decision is discretionary when it involves "social, economic, or political policy," *Cope*, 45 F.3d at 448 (citing *Gaubert*, 499 U.S. at 325, 111 S.Ct. 1267), and is "susceptible to policy analysis," *id.; Aguehounde*, 666 A.2d at 450 (citing *Gaubert*, 499 U.S. at 325, 111 S.Ct. 1267). Thus courts must evaluate the nature of the conduct, not how the decision was made. *Cope*, 45 F.3d at 449.[2]

---

1. Any allegation that the defendant failed to provide adequate protection because the police substation was unmanned, *see* Compl. at 5–6, is in fact barred against the District by the public duty doctrine. The police officers in no way established a special relationship between the officer staffing the substation and the decedent. *See Powell*, 602 A.2d at 1129

(describing requirements for special relationship exception to the public duty doctrine).

2. The Supreme Court set forth a two-step test to determine whether an action is immune under the discretionary function exemption in the Federal Tort Claims Act ("FTCA"). *United States v. Gaubert*, 499 U.S. 315, 322–25,

■ Here, the Court finds that the District does have immunity against allegations that the design of the construction enclosures was negligent. Several cases in D.C. have considered whether decisions involving safety design are discretionary functions. *See, e.g., Cope,* 45 F.3d 445; *Aguehounde,* 666 A.2d 443; *McKethean,* 588 A.2d at 708. In *Aguehounde v. District of Columbia,* for example, the D.C. Court of Appeals held that the setting of the intervals in traffic signals was a discretionary function. 666 A.2d at 444. A pedestrian, who suffered injuries after an automobile struck him in a crosswalk, filed a negligence claim against D.C. for improperly setting the traffic signal intervals. *Id.* at 444–45. The court described the defendant's need to make determinations about the flow of pedestrians and the impact on the city's overall traffic pattern as examples of the policy considerations involved. *Id.* at 448–49. In *Cope v. Scott,* however, the D.C. Circuit applied the analogous discretionary function exemption from the FTCA and found that the deci-

sions about where and what type of road signs to post is not a discretionary function. 45 F.3d at 451. Relying on "engineering judgment" was not enough to view the decision to post signs as "fraught with policy consideration," and, since the road was not a scenic route, neither aesthetic nor environmental policy concerns were at issue. *Id.* at 452. Nevertheless, the court found that the government's failure to maintain adequate skid resistance on the same road was a discretionary decision because it required "balancing factors such as the [the road's] overall purpose, the allocation of funds among significant project demands, the safety of drivers and other park visitors, and the inconvenience of repairs as compared to the risk of safety hazards." *Id.* at 451.

■ Like the maintenance of the road in *Cope,* to the extent that the District designed the makeshift enclosures outside the Metro station, it was required to establish priorities and make policy decisions about how to most effectively use its resources.[3] The District also had to balance

111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *see also Aguehounde v. D.C.,* 666 A.2d 443, 448 (D.C.1995) (adopting two-part test for non-FTCA case). The first step requires asking whether any statute, regulation, or policy "specifically prescribes a course of action for an employee to follow" and, if so, whether the employee followed the directive. If the employee followed the specific prescription, then the action is clearly discretionary. *Id.* In the case at hand, however, there is no allegation or pleading that a specific directive was established. Thus only the second part of the test is applicable: is the challenged act discretionary because it involves the exercise of political, social, or economic judgment? *Cope v. Scott,* 45 F.3d 445, 448 (D.C.Cir.1995).

3. Safety considerations alone, however, do not automatically convert the decision to one of policy. It is true that every decision about how to allocate safety resources incorporates economic or resource-constraint considerations. *See Hughes v. United States,* 110 F.3d

765, 768–69 (11th Cir.1997). But to find that every safety decision is equivalent to a budgetary policy decision would eviscerate the second step, the policy judgment test, in the discretionary function analysis. Indeed, it would all but eviscerate government tort liability altogether, *see Cope,* 45 F.3d at 449, and the discretionary shield against tort liability is not meant to sweep that far. The government, when acting like a private actor, is to be held responsible for negligence like any other private actor. The government simply cannot hide behind the discretionary function exception, claiming that it is considering budgetary constraints, when the decision is devoid of actual political, economic, or social considerations. *See Sami v. United States,* 617 F.2d 755, 766–67 (D.C.Cir.1979) ( "[T]he exception exempts the United States from liability only where the question is not negligence but social wisdom, not due care but political practicability, not reasonableness but economic expediency.") (internal quotes omitted).

considerations about how to protect pedestrians from the dangers inherent in the construction site against how to ensure efficient access to the Metro station. Like in *Aguehounde,* the District had to consider the flow of pedestrians as well as the impact on the mass transit system. Regardless whether the decision is made at the highest echelons of city government, the decision on how to design the enclosures is still an exercise of discretion because it involves competing economic, political, and social considerations.

On the other hand, the District is not immune from the allegations that it negligently failed to maintain the lights, and otherwise provide adequate lighting, in the enclosures. In *Cestonaro v. United States,* the Third Circuit held the National Park Service, which was allegedly negligent in failing to provide adequate lighting to warn of dangers in a National Historic Site's parking light, did not qualify for the discretionary function exception. 211 F.3d 749 (3rd Cir.2000). The plaintiff had filed a wrongful death suit after her husband was murdered during a robbery in the parking lot, and the government claimed immunity. The court explained that the connection between the lack of safety improvements to the parking lot, such as deficient lighting, and the preservation of the historic site was attenuated. *Id.* at 758. Thus the court was "unable to find a rational nexus between the National Park Services's lighting or warning decisions (or non-decisions) and social, economic and political concerns." *Id.* at 759. Like *Cestonaro,* the connection between the supposed policy judgment of providing only one functioning light and the safety improvement is attenuated. Indeed, the District cannot sensibly contend that having two lights, only one of which was functioning, in the maze of enclosures was a "social, economic, or political" decision because the

level of lighting was neither necessary to facilitate the flow of pedestrians through the makeshift enclosures nor, considering the low cost of providing lighting, necessary to allocate substantial resources elsewhere.

The D.C. Circuit's decision in *Cope* is also consistent with the Court's judgment in this case. Upon finding that the government was immune from failing to maintain a road, the D.C. Circuit in *Cope* made clear that the facts were distinguishable from a Ninth Circuit decision that the government was not immune from its failure to maintain a badly eroded section of a road in Alaska. *Cope,* 45 F.3d at 448 (citing *ARA Leisure Services v. United States,* 831 F.2d 193, 194–95 (9th Cir. 1987)). The court explained that the Ninth Circuit's decision was based on the belief that the government's " 'decisions' that caused the road to deteriorate involved the routine questions of maintenance not 'grounded in social, economic, or political policies.' " *Cope,* 45 F.3d at 448. The District's failure to maintain the lights is also an example of a "mundane" activity, like filling pot holes, that does not require a policy judgment. For the reasons above, the Court only dismisses for lack of subject matter jurisdiction allegations involving the design of the makeshift enclosure.

### C. Third Party Criminal Acts

The District also contends that it cannot be held liable for the intervening criminal act of a third party. The Court disagrees. While the D.C. Court of Appeals has repeatedly held that "a more heightened showing of foreseeability" is required for an injury caused by the intervening act of a third party as oppose to merely an injury directly caused by a negligent act of a defendant, *see, e.g., Bailey v. District of Columbia,* 668 A.2d 817, 819 (D.C.1995); *Clement v. Peoples Drug*

*Store, Inc.,* 634 A.2d 425, 428 (D.C.1993), the plaintiff need merely to allege such foreseeability to satisfy the motion-to-dismiss requirements. Here, the plaintiff alleges that the District should have foreseen the criminal act because of the design of the makeshift enclosure, lack of lighting and security, and the amount of the crime in the area. So long as the plaintiff can show that the District had "an increased awareness of the danger of a particular criminal act," *District of Columbia v. Doe,* 524 A.2d 30, 33 (D.C.1987), the District can be liable. Thus the plaintiff's allegations are enough to survive a motion to dismiss, and she must be given an opportunity to demonstrate the necessary foreseeability.

### III. Order

Upon consideration of the defendant's motion to dismiss and the opposition thereto, it is, this 13th of February 2003, hereby

**ORDERED** that the defendant's motion to dismiss [10–1] is DENIED in part and GRANTED in part;

**SO ORDERED.**