138 Nev., Advance Opinion 4

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| LARRY PORCHIA,<br>Appellant,<br>vs.<br>CITY OF LAS VEGAS; STEPHEN<br>MASSA; NICHOLAS PAVELKA;<br>WILLIAM HEADLEE; MARINA CLARK;<br>JASON W. DRIGGERS; AND LVFR<br>RISK MANAGEMENT,<br>Respondents. | No. 78954<br><br>**FILED**<br><br>FEB 17 2022<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>DEPUTY CLERK |

Appeal from a district court order granting a motion to dismiss a tort action. Eighth Judicial District Court, Clark County; Gloria Sturman, Judge.

*Affirmed in part, reversed in part, and remanded.*

Olson, Cannon, Gormley & Stoberski and Stephanie M. Zinna, Las Vegas, for Appellant.

Bradford R. Jerbic, City Attorney, and Jeffry M. Dorocak and Rebecca L. Wolfson, Deputy City Attorneys, Las Vegas, for Respondents.

_____

BEFORE THE SUPREME COURT, EN BANC.

22-05252

## OPINION

By the Court, HERNDON, J.:

Appellant Larry Porchia alleges EMTs denied him medical treatment and transportation to the hospital after negligently misdiagnosing him and/or because he was homeless and uninsured. The district court dismissed Porchia's complaint after concluding that Porchia's claims were barred by the public duty doctrine and the Good Samaritan statute. However, accepting Porchia's allegations as true, a failure to render medical assistance or to transport a patient to the hospital based solely on their socioeconomic status may qualify as an affirmative act exempted from the public duty doctrine and as gross negligence, which would render the Good Samaritan statute inapplicable. Thus, we conclude the district court erred in dismissing Porchia's complaint in its entirety at such an early stage in the proceedings.

### FACTS AND PROCEDURAL HISTORY

On August 26, 2015, at 3:45 a.m., Porchia's friend called emergency services on his behalf because he was suffering from severe stomach pain, vomiting, and hot flashes. Las Vegas Fire and Rescue (LVFR), which employs respondents Firefighter-Paramedic Stephen Massa and Firefighter-Advanced Emergency Medical Technician Nicholas Pavelka, was dispatched to Porchia's location. Massa and Pavelka placed Porchia on a stretcher, took his vitals, and asked him questions about his condition. Porchia requested they transport him to the hospital. According to Porchia's amended complaint, once he informed them that he was homeless and did not have insurance, Massa and Pavelka diagnosed Porchia with gas pain, removed him from the stretcher, and concluded he did not need to be transported to the hospital.

At 11 a.m., another of Porchia's friends called emergency services again on his behalf because he was still experiencing severe stomach pain. LVFR was again dispatched, and different EMTs immediately transported Porchia to the hospital, where he underwent emergency surgery for a bowel obstruction. Porchia asserts that both the doctor and the nurse at the hospital informed him that if he had received medical treatment earlier, he would not have required emergency surgery.

Porchia filed, pro se, an amended complaint alleging negligence against respondents. The district court granted respondents' motion to dismiss, concluding that, as a matter of law, respondents could not be held liable for damages based on the public duty doctrine, NRS 41.0336, and the Good Samaritan statute, NRS 41.500(5). Porchia appealed, and the Court of Appeals affirmed the district court's order. *Porchia v. City of Las Vegas*, No. 78954-COA, 2020 WL 7396925 (Nev. Ct. App. Dec. 16, 2020) (Order of Affirmance). Porchia filed a petition for review with this court, which we granted.

## DISCUSSION

We review de novo a district court order dismissing a complaint pursuant to NRCP 12(b)(5). *Dezzani v. Kern & Assocs., Ltd.*, 134 Nev. 61, 64, 412 P.3d 56, 59 (2018). Under our "rigorous standard of review" of such orders, we must consider all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor. *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008). A "complaint should be dismissed only if it appears beyond a doubt that [the plaintiff] could prove no set of facts, which, if true, would entitle [the plaintiff] to relief." *Id.* at 228, 181 P.3d at 672.

*The public duty doctrine*

This court first recognized the public duty doctrine in 1979 when it concluded that a police department could not be held liable for injuries sustained as the result of another's unlawful actions, even when the injured party claimed the police department failed to provide adequate security and medical care at a public event. *Bruttomesso v. Las Vegas Metro. Police Dep't*, 95 Nev. 151, 153, 591 P.2d 254, 255 (1979). In that matter, this court emphasized that "[t]he duty of the government . . . runs to all citizens and is to protect the safety and well-being of the public at large." *Id.* The rationale behind the public duty doctrine permits public entities to carry out their duty to the public without fear of financial loss or reprisal. *See generally Scott v. Dep't of Commerce*, 104 Nev. 580, 585-86, 763 P.2d 341, 344 (1988) ("[T]he public interest is better served by a government which can aggressively seek to identify and meet the current needs of the citizenry, uninhibited by the threat of financial loss should its good faith efforts provide less than optimal—or even desirable—results." (quoting *Commonwealth, Dep't of Banking & Sec. v. Brown*, 605 S.W.2d 497, 499 (Ky. 1980)). Thus, the public duty doctrine shields public entities, like fire departments or public ambulance services, from liability on the basis that such entities should not be inhibited by their good faith efforts to serve the public, even when the outcome of their emergency treatment is less than desirable.

The public duty doctrine was codified in NRS 41.0336, which provides that public officers called to assist in an emergency are not liable for their negligent acts or omissions unless one of two exceptions is applicable: (1) the public officer made a specific promise or representation to the person and the person relied on that promise or representation to his or her detriment, resulting in the officer assuming a special duty to the

individual person; or (2) the conduct of the public officer "affirmatively caused the harm." Additionally, the public duty doctrine does not "abrogate the principal of common law that the duty of governmental entities to provide services is a duty owed to the public, not to individual persons." NRS 41.0336.

*The special duty exception*

Porchia argued in his amended complaint that the first exception to the public duty doctrine applied because Massa and Pavelka breached a special duty they owed to him, as an individual, to transport him to the hospital. Nevada recognizes two ways in which a special duty may be established: (1) if a statute or ordinance sets forth "mandatory acts clearly for the protection" of an individual "rather than the public as a whole," *Coty v. Washoe County*, 108 Nev. 757, 761 n.6, 839 P.2d 97, 99 n.6 (1992) (internal quotations omitted); or (2) if a public officer, "acting within the scope of official conduct, assumes a special duty by creating specific reliance on the part of certain individuals," *id.* at 760, 839 P.2d at 99. *See also Charlie Brown Constr. Co. v. City of Boulder City*, 106 Nev. 497, 505-06, 797 P.2d 946, 951 (1990) (explaining that a special duty sufficient to pierce the public duty doctrine was established by a city ordinance that imposed a duty to act for the benefit of specific entities), *abrogated on other grounds by Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259 (2000).

Porchia failed to point to any Nevada or local law that required Massa or Pavelka to transport him to the hospital under the asserted circumstances. The Legislature has recognized that "prompt and efficient emergency medical care and transportation is necessary for the health and safety of the people of Nevada," NRS 450B.015, but that statute does not require EMTs to transport every member of the public who seeks emergency medical care. If an EMT has exercised his or her duty of care in examining

a patient and determined that no further medical intervention is necessary, the EMT does not have a duty to transport the patient to the hospital. *See, e.g., Watts v. City of Chicago*, 758 N.E.2d 337, 340 (Ill. App. Ct. 2001) (explaining that a paramedic has a duty to transport a person to the hospital only if there is a medical necessity); *Wright v. Hamilton*, 750 N.E.2d 1190, 1194 (Ohio Ct. App. 2001) (providing that if a paramedic utilizes a reasonable exercise of professional judgment in determining that the patient does not require additional medical attention, the paramedic need not transport the patient to the hospital). Accordingly, an EMT's duty is owed to the public, not to the individual person, and there is no law establishing a special duty to transport all patients to the hospital.

Porchia further failed to demonstrate a special duty created by a promise from Massa or Pavelka that he relied upon to his detriment. *See Hines v. District of Columbia*, 580 A.2d 133, 136 (D.C. 1990) (stating that "the mere fact that an individual has emerged from the general public and become[s] an object of the special attention of public employees does not create a relationship which imposes a special legal duty"). He does not assert that Massa or Pavelka promised to transport him to the hospital. Because Porchia cannot point to a special duty Massa or Pavelka had to transport him to the hospital, his asserted claims failed to demonstrate the first exception to the public duty doctrine.

*The affirmative harm exception*

Porchia also argued in his amended complaint that he was refused treatment and transport by Massa and Pavelka because of his socioeconomic status and that the delay in receiving treatment was what caused his need for surgery. Consequently, he argued, the second exception to the public duty doctrine applies because, accepting the factual assertions as true, Massa and Pavelka affirmatively caused him harm. He alleged that

SUPREME COURT
OF
NEVADA

(O) 1947A

6

they took affirmative steps by removing him from the stretcher when they learned he was homeless and uninsured.

In *Coty v. Washoe County*, 108 Nev. 757, 760-61, 839 P.2d 97, 99 (1992), we recognized that NRS 41.0336 did not define the phrase "affirmatively caused the harm," and we defined the phrase as meaning "that a public officer must actively create a situation which leads directly to the damaging result." Accordingly, to have invoked the affirmative harm exception to the public duty doctrine, Porchia must have alleged facts that, when taken as true, demonstrate that Massa and Pavelka created a situation that led directly to Porchia's alleged harm and that their actions "actively and continuously" operated to bring about his harm. *See id.* at 760, 839 P.3d at 99 (explaining that in negligence actions, "legal cause is determined when the actor's negligent conduct *actively and continuously* operates to bring about the harm to another" (internal quotations omitted)).

The Court of Appeals of Utah has further described when affirmative acts by a public officer establish liability under the affirmative act exception to the public duty doctrine. *Faucheaux v. Provo City*, 343 P.3d 288, 293 (Utah Ct. App. 2015).

> [T]he public duty doctrine applies only to the omissions of a governmental actor. Thus, where the affirmative acts of a public employee actually causes the harm . . . the public duty doctrine does not apply. Affirmative acts include active misconduct working positive injury to others, while omissions are defined as passive inaction, i.e., a failure to take positive steps to benefit others, or to protect them from harm. A negligent affirmative act leaves the plaintiff positively worse off as a result of the wrongful act, whereas in cases of negligent omissions, the plaintiff's situation is

> unchanged; she is merely deprived of a protection which, had it been afforded her, would have benefitted her.

*Id.* (internal quotation marks and citations omitted). We find this analysis persuasive.

This court has considered the affirmative harm exception only in one case, in which a police officer pulled over an intoxicated driver, cited him for speeding, directed him to park his car on the side of the road, and arranged for the driver to be transported home, but left before the driver's transportation arrived. *Coty*, 108 Nev. at 758-59, 839 P.2d at 98. The driver then resumed driving and collided with another vehicle, killing himself and the passenger in the other vehicle. *Id.* at 759, 839 P.2d at 98. In the wrongful death action that was subsequently filed against the officer, this court concluded that because the driver ignored the police officer's order to park his car on the side of the road, the police officer was not the active and direct cause of the harm. *Id.* at 762, 839 P.2d at 100. Thus, the public duty doctrine precluded the wrongful death action. *Id.* While *Coty* clearly established the appropriate test, the facts of that case are not directly analogous to the present case, so we look to other jurisdictions for persuasive authority on this matter.

In *Woods v. District of Columbia*, 63 A.3d 551, 552 (D.C. 2013), EMTs refused to transport the appellant after misdiagnosing her symptoms of slurred speech, loss of balance, and vomiting as a side effect of recently quitting smoking. The next day, appellant was transported to the hospital by different EMTs, where it was determined she had suffered a stroke. *Id.* The District of Columbia Court of Appeals held that detrimental reliance on "a negligent judgment call, discretionary determination, or incorrect statement of fact by a [public] employee providing on-the-scene emergency services does not constitute the kind of actual and direct worsening of the

plaintiff's condition that will permit imposition of negligence liability despite the public-duty doctrine." *Id.* at 557 (internal quotations omitted).

In *Johnson v. District of Columbia*, 580 A.2d 140, 141 (D.C. 1990), the decedent suffered a heart attack and, after three 911 calls and a 30-minute delay, firefighters arrived on the scene but lacked equipment to examine or treat the decedent other than to administer cardiopulmonary resuscitation. Sometime later, EMTs arrived, began to treat the decedent, and immediately transported her to the hospital, where she died. *Id.* A doctor at the hospital stated that if she had arrived earlier, he could have saved her. *Id.* There was no evidence that some act by the firefighters made the decedent's condition worse than it would have been if the firefighters had failed to arrive at all or not done anything after their arrival. *Id.* at 142. Because the firefighters' active conduct did not actually and directly worsen the decedent's condition, the District of Columbia Court of Appeals concluded the public duty doctrine barred firefighter liability. *Id.* at 142-43.

In *Faucheaux v. Provo City*, a husband and wife fought earlier in the day, resulting in police intervention; later, the wife texted the husband goodbye and took prescription pills. 343 P.3d at 291. The husband called 911 and told police officers his wife was suicidal and abusing prescription drugs and asked them to call EMTs. *Id.* The police spoke to the wife, concluded she just needed to "sleep it off," tucked her into bed, and told the husband to leave her alone. *Id.* When the husband checked on her hours later, she was dead. *Id.* The Court of Appeals of Utah concluded that by tucking the wife into bed and admonishing the husband to leave the wife alone, the police officers undertook affirmative actions, rather than omissions, which left the wife worse off. *Id.* at 293-94. Because the police officers did not merely fail to help but instead hindered the situation, the

court concluded that the police officers had taken affirmative actions and the public duty doctrine did not protect the police officers from liability. *Id.* at 294.

Because the present case was resolved at an initial stage of the proceedings, the facts have not been as fully developed as some of the cases discussed above. Therefore, to the extent Porchia contends that Massa and Pavelka misdiagnosed him, which led them to not transport him to the hospital for further medical attention, he fails to demonstrate facts supporting an affirmative action by Massa or Pavelka causing him harm. A diagnosis made by EMTs based on their medical expertise, which later is determined to be incorrect, is more akin to an omission by EMTs than to an affirmative action causing harm. Therefore, Porchia's allegations that Massa and Pavelka misdiagnosed him do not qualify for the affirmative action exception to the public duty doctrine.

Nevertheless, because we must accept all of Porchia's factual assertions in his amended complaint as true, we must accept as true his allegation that Massa and Pavelka removed him from the stretcher upon learning that he was homeless and uninsured and refused to transport him based on his socioeconomic status, not a misdiagnosis. If these facts are supported by evidence, they would establish an affirmative action by Massa and Pavelka, not a mere omission/misdiagnosis. It would be more than a passive action that left Porchia in the same situation he was in earlier. Instead, this would be an affirmative action that hindered Porchia, causing a delay in his medical treatment, which according to the facts asserted in his amended complaint was the only reason he required emergency surgery. Therefore, the facts alleged by Porchia met the affirmative harm exception to the public duty doctrine. Accordingly, we conclude the district court erred

SUPREME COURT
OF
NEVADA

(O) 1947A

10

in dismissing the amended complaint in its entirety under the public duty doctrine.

*The Good Samaritan statute*

Next, Porchia claims the district court also erred in dismissing his action under the Good Samaritan statute, NRS 41.500(5), because the facts alleged in his amended complaint, taken as true, demonstrated Massa's and Pavelka's failure to render medical assistance based on Porchia's socioeconomic status and would establish gross negligence. NRS 41.500(5) provides that any person employed by a public fire-fighting agency and authorized to render emergency medical care

> is not liable for any civil damages as a result of any act or omission, not amounting to gross negligence, by that person in rendering that care or as a result of any act or failure to act, not amounting to gross negligence, to provide or arrange for further medical treatment for the injured or ill person.

NRS 41.500(5) does not define gross negligence, but we have previously defined it as "an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care." *Cornella v. Justice Court*, 132 Nev. 587, 594, 377 P.3d 97, 102 (2016) (quoting *Hart v. Kline*, 61 Nev. 96, 100, 116 P.2d 672, 674 (1941)). Gross negligence is a "very great negligence, or the absence of slight diligence, or the want of even scant care" that "amounts to indifference to present legal duty, and to utter forgetfulness of legal obligations so far as other persons may be affected" but "falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong." *Hart*, 61 Nev. at 100-01, 116 P.2d at 674 (quoting *Shaw v. Moore*, 162 A. 373, 374 (Vt. 1932)).

As discussed above, because we must accept Porchia's allegations as true, an EMT's decision to not render medical assistance or assist a patient with obtaining further medical attention based purely on the patient's socioeconomic status might rise to the level of gross negligence. Such a decision could amount to an aggravated act, absent of even slight diligence and also indifferent to legal obligations owed to the patient. Thus, we conclude Porchia's factual claims may be sufficient to assert Massa's and Pavelka's actions amounted to gross negligence, rendering the application of Good Samaritan protection under NRS 41.500(5) improper. Accordingly, we conclude the district court erred in dismissing Porchia's amended complaint in its entirety under the Good Samaritan statute.

## CONCLUSION

The district court properly concluded that the specific duty exception to the public duty doctrine did not apply because paramedics do not have a duty to transport patients who in their medical opinion do not require further medical attention, and because Massa and Pavelka did not make a specific promise to Porchia to transport him on which he relied to his detriment. Additionally, to the extent Porchia's claim for negligence was based on Massa's and Pavelka's misdiagnosis, the district court also properly concluded that the affirmative action exception to the public duty doctrine did not apply. Nevertheless, because we have to accept Porchia's claims in his amended complaint as true, and because he alleged that Massa and Pavelka refused to transport him to the hospital on the basis that he was homeless and uninsured, the district court erred in concluding the affirmative action exception to the public duty doctrine could not apply and

SUPREME COURT
OF
NEVADA

(O) 1947A

12

that the Good Samaritan statute necessarily precluded Porchia's requested relief. Accordingly, we affirm the district court's order to the extent it dismissed Porchia's claims based on misdiagnosis, reverse it to the extent it dismissed claims based on socioeconomic discrimination, and remand for further proceedings on the surviving claims.

_____, J.
Herndon

We concur:

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

_____, J.
Pickering